UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

IN RE:

305 EAST 61st STREET GROUP LLC,

23-CV-00080 (RA)

MEMORANDUM
OPINION & ORDER

---

RONNIE ABRAMS, United States District Judge:

Appellant Little Hearts Marks Family II, LLP ("Little Hearts")—an equity member of 305 East 61st Street Group LLC ("Debtor"), which is currently engaged in bankruptcy proceedings after seeking Chapter 11 relief—filed this appeal challenging the Bankruptcy Court's approval of a settlement agreement pursuant to Bankruptcy Rule 9019 regarding the Debtor's remaining assets. For the reasons which follow, the appeal of the Bankruptcy Court's order approving the settlement is dismissed as equitably moot. Even if the appeal were not moot, however, in light of the significant deference owed to the Bankruptcy Court's evaluation of the reasonableness of such a settlement, *see, e.g., In re Delta Air Lines, Inc.*, 374 B.R. 516, 522 (S.D.N.Y. 2007) (a bankruptcy court's finding that a Rule 9019 settlement is reasonable may only be overturned where "no reasonable man could agree with the decision to approve the settlement"), the order of the Bankruptcy Court was not an abuse of discretion.

## BACKGROUND

The Debtor in the underlying bankruptcy proceedings, 305 East 61st Street Group LLC, owned a ten-story former warehouse building in Manhattan which was acquired for conversion into a condominium. The Debtor, in turn, was owned by four members: (1) 61 Prime LLC

("Prime"); (2) Little Hearts; (3) Thaddeus Pollock; and (4) Onestone 305 LLC ("Onestone"). Prime, whose sole member and manager is Jason Carter, held a 50% ownership interest in the Debtor. Little Hearts, whose principal is Mitchell Marks, held a 30% ownership interest in the Debtor and also served as its manager. Pollock and Onestone each held a 10% ownership interest.

On June 10, 2019, the Debtor filed for Chapter 11 bankruptcy. Several months later, in August, creditors of Prime and Carter (together, the "Carter Parties") filed claims against the Debtor in the amount of more than $60 million. The Debtor's schedule reflected more than $2.4 million in unsecured claims, and the claims register reflected approximately $85 million in unliquidated general unsecured claims, including the Carter Parties' claims. Although not immediately relevant for purposes of the present appeal, the Carter Parties, Little Hearts, and the remaining equity holders of the Debtor had been engaged in lengthy litigation regarding the company's operations and assets prior to the time that it filed for Chapter 11 relief. *See, e.g., In re 305 East 61st St. Grp. LLC*, 644 B.R. 75, 78–80 (Bankr. S.D.N.Y. 2022) (detailing the years-long legal battle between the equity members for control of the Debtor).

In October 2019, and in light of the equity members' litigious history and rivaling interests regarding the Debtor's assets, the Bankruptcy Court appointed Kenneth P. Silverman as the Chapter 11 Trustee. *See* Bankr. Op. at 3 (Memorandum Decision recounting that appointment of a neutral third party as trustee had been necessary because "the equity members could not agree on a path forward for the Debtor"). The Trustee then filed a plan of liquidation (the "Plan"), which was confirmed by an order of the Bankruptcy Court in August of 2020. The Plan, which became effective the next month, established a trust (the "Creditor Trust") into which all of the Debtor's remaining assets—including causes of action held by the Debtor—were transferred. Silverman, already the Chapter 11 Trustee, also assumed the role of Creditor Trustee.

After the Plan went into effect, the Creditor Trustee and the Carter Parties engaged in extensive settlement negotiations regarding the Carter Parties' significant claims against the Debtor. After more than a year of negotiation, in late 2021, the Creditor Trustee and the Carter Parties entered into a settlement agreement which, among other things, reduced the Carter Parties' claims by more than $18 million—from $60.9 million to $42.5 million—and which provided for a one-time distribution of $650,000 from the available funds of the estate which would otherwise have been distributed to the Carter Parties to unsecured creditors and to the Creditor Trustee as a success fee for negotiating the settlement, as well as for administering the Trust.

The Bankruptcy Court approved the settlement in a Memorandum Decision issued in November 2022, considering each of the seven so-called *Iridium* factors, which govern the assessment of a Rule 9019 bankruptcy settlement in the Second Circuit. *See* Bankr. Op. at 5–10 (citing *In re Iridium Operating LLC*, 478 F.3d 452, 462 (2d Cir. 2007)). Significantly, although the Bankruptcy Court specifically encouraged Little Hearts to move for a stay of the Settlement Order in December 2022, in light of its intent to appeal the approval of the agreement, Little Hearts chose not to seek a stay. *See* Dkt. 15-1, Tr., Dec. 5, 2022, at 9:11–24. Accordingly, after the statutory fourteen day stay lapsed on December 19, 2022, the Settlement Order became effective and the Creditor Trustee made distributions pursuant to its terms. Little Hearts, the Appellant here, filed this appeal on January 5, 2023, challenging the Bankruptcy Court's approval of the settlement. *See* Dkt. 1.

## LEGAL STANDARD

"[T]he bankruptcy judge is uniquely positioned to consider the equities and the reasonableness of a particular compromise, and his evaluations and acceptance of the compromised settlements are entitled to deference on a review." *In re Drexel Burnham Lambert*

*Grp.*, 140 B.R. 347, 349 (S.D.N.Y. 1992) (cleaned up). Accordingly, "[a]pprovals of Bankruptcy Rule 9019 settlements are … reviewed for abuse of discretion." *Ad Hoc Comm. of Kenton Cnty. Bondholders v. Delta Air Lines, Inc.*, 309 F. App'x 455, 457 (2d Cir. 2009) (citing *In re Iridium Operating, LLC*, 478 F.3d at 461 n.13). A bankruptcy court abuses its discretion where it arrives at "(i) a decision resting on an error of law (such as application of the wrong legal principle) or a clearly erroneous factual finding, or (ii) a decision that, though not necessarily the product of a legal error or a clearly erroneous factual finding, cannot be located within the range of permissible decisions." *In re Aquatic Dev. Grp., Inc.*, 352 F.3d 671, 678 (2d Cir. 2003) (cleaned up). For a district court to find that a bankruptcy court's approval of a settlement was an abuse of discretion, it must find that "no reasonable man could agree with the decision to approve the settlement." *In re Delta Air Lines, Inc.*, 374 B.R. 516, 522 (S.D.N.Y. 2007).

## DISCUSSION

As an initial matter, and in significant part because Appellant specifically elected not to seek a stay of the Settlement Order with the Bankruptcy Court before it went into effect and distributions were made to creditors, this appeal is equitably moot. But even if it were not, the Court cannot conclude, on this record, that the Bankruptcy Court's reasonable decision to approve the settlement agreement was an abuse of discretion.

### I. The Appeal of the Settlement is Equitably Moot

Dismissal of the appeal is appropriate given that it is equitably moot. Equitable mootness is a prudential doctrine that is invoked to avoid disturbing a reorganization plan once it has already been implemented. *See In re Metromedia Fiber Network, Inc.*, 416 F.3d 136, 144 (2d Cir. 2005); *see also In re Leatherstocking Antiques, Inc.*, 2013 WL 5423995 (S.D.N.Y. Sept. 27, 2013). The doctrine applies to appeals of settlement and confirmation orders, as well as appeals from orders

confirming plans of reorganization.  *See In re Charter Communs., Inc.*, 691 F.3d 476 (2d Cir. 2012).  As another court in this district observed, bankruptcy appeals are "strongly presumed" to be moot when the reorganization plan has been substantially consummated.  *In re Charter Communs., Inc.*, 449 B.R. 14, 22 (S.D.N.Y. 2011).  This presumption may be overcome only when *each* of five factors identified by the Second Circuit have been satisfied.  *See In re Chateaugay, Corp.*, 10 F.3d 944 (2d Cir. 1993) ("*Chateaugay II*").  Those factors outlined by the Circuit are:

> [1] the court can still order some effective relief; [2] such relief will not affect the re-emergence of the debtor as a revitalized corporate entity; [3] such relief will not unravel intricate transactions so as to knock the props out from under the authorization for every transaction that has taken place and create an unmanageable, uncontrollable situation for the Bankruptcy Court; [4] the parties who would be adversely affected by the modification have notice of the appeal and an opportunity to participate in the proceedings; and [5] the appellant pursued with diligence all available remedies to obtain a stay of execution of the objectionable order … if the failure to do so creates a situation rendering it inequitable to reverse the orders appealed from.

*Chateaugay II*, 10 F.3d at 952–53 (cleaned up); *see also, e.g., In re RS Old Mill, LLC*, 2020 WL 2306447, at *5 (S.D.N.Y. May 8, 2020) (applying same); *In re Leatherstocking Antiques, Inc.*, 2013 WL 5423995, at *4 (observing that the presumption of equitable mootness "may only be overcome when *all* five circumstances are present").  Dismissal under the equitable mootness doctrine is particularly appropriate where "the appellant has made no effort to obtain a stay and has permitted such a comprehensive change of circumstances to occur as to render it inequitable for the appellate court to reach the merits of the appeal."  *In re Leatherstocking Antinques, Inc.*, 2013 WL 5423995, at *4 (citing *In re Chateaugay Corp.*, 988 F.2d 322, 324 (2d Cir. 1993) ("*Chateaugay I*")).

Because Appellant fails to establish that any of the *Chateaugay II* factors are met here—let alone that they all are—it cannot overcome the strong presumption that a settlement, once approved and implemented, should not be unwound.  To the contrary, four of the factors weigh in

favor of Appellees.  First, critically, Appellant cannot meet the fifth factor, as it failed to even request a stay of Settlement Order, notwithstanding its obligation under *Chateaugay II* that a party pursue such a stay "with diligence" pending appeal.  10 F.3d at 953.  Rather, Appellant chose not to seek a stay once the typical statutory stay lapsed (fourteen days after entry of the Order).  Indeed, it chose not to seek such a stay even after prompting from the Bankruptcy Judge that seeking one would be prudent under the circumstances:

> THE COURT: . . . [I]f you have an intent to appeal, that's fine.  That's your right.  That's all good.  Then I think the path is to ask for a stay pending appeal.  So do you want to do that?  I mean, so I don't want to put you through the paces on that if you're not going to appeal.  But that's entirely your call.  So, rather than think theoretically about this stuff, I'd rather just get down to brass tacks and say what would you like to do and if you want to do this, how do we protect your rights and how do we address that?  So I'd appreciate any assistance that you have on that front.
>
> MR. GOLDENBERG: So, Your Honor, at this point in time, we do intend to, but I did not contemplate seeking a stay.

Dkt. 15-1, Tr., Dec. 5, 2022, at 9:11–24.  *See also id*. at 11:8–11 (counsel for Appellee observing, "[i]f the Marks parties want to appeal, they can, of course, appeal.  But they would have to get a stay in order to stop the trustee"); *id*. at 11:16–23 (the Bankruptcy Court clarifying that there was "no stay motion" made by Appellant, and that the Settlement Order would thus only be subject to a statutory "14-day stay pending appeal and then people can do whatever they want").  This failure to seek a stay was further admitted to this Court during oral argument:

> THE COURT:  The bankruptcy court specifically invited a motion to stay.  The decision was made not to move for one.
>
> MR. GOLDENBERG:  That is true, your Honor.  I can't get past the fact that a motion to stay was not made.

Tr., August 1, 2023 Oral Arg., at 6.  By failing to move for a stay, Appellant allowed the Creditor Trustee to make significant distributions from the Creditor Trust's limited remaining assets—

6

payments which would have been temporarily suspended had a stay been sought by Appellant and granted in the normal course. Because whether an appellant sought a stay has been termed the "chief consideration in deciding whether [an] appeal is equitably moot," *In re Windstream Holdings, Inc*, 2022 WL 14199458, at *1 (2d Cir. Oct. 25, 2022), Appellant's failure to pursue a stay, standing alone, is sufficient to justify dismissal of this appeal as equitably moot. *See also id*. at *2 (holding that "[t]o avoid dismissal for equitable mootness, an appellant must have sought a stay with diligence").

In any event, Appellant also fails to meet the first *Chateaugay II* factor, as it does not demonstrate how the Court could order effective relief. Distributions greater than $1 million have already been made by the Creditor Trust after the Settlement Order provided for the subordination of certain claims, thereby allowing distributions to general unsecured creditors far in excess of the amount they otherwise would have received absent such subordination. As the Second Circuit has made clear, "in the bankruptcy context 'an appeal is also moot when even though effective relief could conceivably be fashioned, implementation of that relief would be inequitable.'" *Bartel v. Bar Harbor Airways, Inc.*, 196 B.R. 268, 272 (S.D.N.Y. 1996) (quoting *In re Best Products Co., Inc.*, 68 F.3d 26, 30 (2d Cir. 1995)); *see also In re Broadway Assocs., L.P.*, 153 B.R. 400, 405 (S.D.N.Y. 1993) ("In the bankruptcy context, these equitable principles retain an important role, and the case may be moot in situations where the court has jurisdiction under Article III but reversing on appeal would destroy the work of the bankruptcy court."). Any rewriting of the Settlement Order would result in an inequitable outcome to the bankruptcy estate and its creditors—particularly to the unsecured creditors who already benefited from its enforcement. *See, e.g.*, *In re Delta Air Lines, Inc.*, 374 B.R. at 524 (finding that it would be "inequitable to undo the Settlement to benefit a small number of dissenting Bondholders," and that this "contribute[s]

7

to a finding of equitable mootness"). Finally, the fourth *Chateaugay II* factor is also plainly not met on this record, as unsecured creditors who benefited from enforcement of the Settlement Order by way of the Creditor Trust's distribution do not appear to be on actual notice of this appeal, and thus have not had the opportunity to participate in the proceedings.

Because Appellant cannot satisfy many, let alone all, of the relevant factors, it is unable to overcome the "strong presumption," that this appeal is equitably moot. *In re Charter Communs., Inc.*, 449 B.R. 14, 22 (S.D.N.Y. 2011).

### II.     The Bankruptcy Court Did Not Abuse its Discretion in Approving the Settlement

Even if the appeal were not equitably moot, Appellant has failed to demonstrate that the Bankruptcy Court abused its discretion in approving the settlement. When approving a settlement under Bankruptcy Rule 9019, "a bankruptcy judge need not decide the numerous questions of law and fact raised by the settlement, but rather, should 'canvass the issues to see whether the settlement falls below the lowest point in the range of reasonableness.'" *E. 44th Realty, LLC v. Kittay*, 2008 WL 217103, at *8 (S.D.N.Y. Jan. 23, 2008) (quoting *In re W.T. Grant Co.*, 688 F.2d 599, 608 (2d Cir. 1983)). As set forth by the Second Circuit, the factors to be considered when approving a bankruptcy settlement are:

> (1) The balance between the litigation's possibility of success and the settlement's future benefits; (2) the likelihood of complex and protracted litigation, with its attendant expense, inconvenience, and delay, including the difficulty in collecting on the judgment; (3) the paramount interests of the creditors, including each affected class's relative benefits and the degree to which creditors either do not object to or affirmatively support the proposed settlement; (4) whether other parties in interest support the settlement; (5) the competency and experience of counsel supporting, and the experience and knowledge of the bankruptcy court judge reviewing, the settlement; (6) the nature and breadth of releases to be obtained by officers and directors; and (7) the extent to which the settlement is the product of arm's length bargaining.

*In re Iridium Operating LLC*, 478 F.3d 452, 462 (2d Cir. 2007) (cleaned up). "To be approved,

'[t]he settlement need not be the best that the debtor could have obtained,'" *In re Sabine Oil & Gas Corp.*, 555 B.R. 180, 257 (Bankr. S.D.N.Y. 2016), and a district court should not overturn a bankruptcy court's approval of a settlement under Bankruptcy Rule 9019 "unless it is manifestly erroneous or an abuse of discretion," *In re Tower Auto. Inc.*, 241 F.R.D. 162, 166 (S.D.N.Y. 2006).

Here, the *Iridium* factors were considered by the Bankruptcy Court in its Memorandum Decision, *see* Bankr. Op. at 7–8, and it was not an abuse of discretion for that Court to determine that they weighed in favor of the settlement agreement being a reasonable one. First, the Bankruptcy Court sensibly concluded that the settlement's benefits—namely, "full payment to all unsecured creditors," and the reduction of the Carter Parties' "claim amount by more than $18,000,000," *id*. at 7—was reasonable in light of the risk of "lengthy and costly" litigation involving the Carter Parties' claims in the alternative. *Id*. (citing Trustee's Motion at ¶¶ 1, 17). Second, the Bankruptcy Court soundly determined that, given the litigiousness of the parties up to that point, there was a "likelihood of long and protracted litigation absent the settlement," thereby further risking the possibility that the Creditor Trust's assets would have dried up, leaving all creditors worse off by the time the litigation had resolved. *Id*. (citing Tr., July 14, 2022 at 10:1–9, 31:2–5); *see also In re Republic Airways Holdings Inc*., 2016 WL 2621990, at *12 (S.D.N.Y. May 6, 2016) ("Settlements and compromises are favored in bankruptcy as they minimize costly litigation and further parties' interests in expediting the administration of the bankruptcy estate."). Third, it is plain that the unsecured creditors benefited from the Settlement Order, as they were fully paid by the Creditor Trustee under the terms of the Plan. *Id*. at 7–8.

As to the fifth and seventh factors, it was reasonable for the Bankruptcy Court to determine that it was "highly relevant" that the settlement had been negotiated, in part, by the Creditor Trustee, and thus at arm's length between neutral parties. *See id*. at 8; *see also id*. ("Unlike warring

equity holders, the Creditor Trustee is an impartial, disinterested party and does not have a personal economic stake in the outcome of this case."). Contrary to Appellant's insistence on appeal, the fact that the Creditor Trustee was compensated with a "success fee" for negotiating and achieving the global settlement does not taint his involvement or render the settlement unsound. The Carter Parties agreed to pay the Trustee from their own distributions under the terms of the settlement—something which is regularly seen in this district. *See, e.g.*, *In re WorldCom, Inc.*, 2003 WL 23861928, at *61 (Bankr. S.D.N.Y. Oct. 31, 2003) (observing that "[c]reditors are generally free to do whatever they wish with the bankruptcy dividends they receive, including sharing them with other creditors, so long as recoveries received under the Plan by other creditors are not impacted," and collecting cases); *In re DBSD N. Am., Inc.*, 419 B.R. 179, 212 (Bankr. S.D.N.Y. 2009) (sharing proceeds is permissible when "complaining creditor would get no more if the gift had not been made"). In effect, the Carter Parties voluntarily forfeited $500,000 of their recovery—on a claim already reduced by more than $18 million—in order to compensate the Creditor Trustee for providing finality with the settlement and thus not permitting the Trust's limited assets to continue to dry up. Finally, as to the fourth and sixth factors, the Bankruptcy Court fairly concluded that the opposition of three equity members did not render the settlement unreasonable. In light of the numerous other benefits to the parties and the bankruptcy estate, this Court cannot conclude that the opposition of three equity members to the settlement weighs so strongly such that "no reasonable man could agree with the decision to approve the settlement." *In re Delta Air Lines, Inc.*, 374 B.R. at 522.

The "bankruptcy judge is uniquely positioned to consider the equities and the reasonableness of a particular compromise, and his evaluations and acceptance of the compromised settlements are entitled to deference on a review." *In re Drexel Burnham Lambert*

*Grp.*, 1992 U.S. Dist. LEXIS 6047, at *5–6 (cleaned up). On this record, the Court cannot conclude that it was an abuse of discretion to approve the Settlement.

## CONCLUSION

Accordingly, for the foregoing reasons, the appeal of the Bankruptcy Court's order approving the settlement agreement is dismissed. The Clerk of Court is respectfully directed to terminate the motion pending at Dkt. 3, and to close this action.

SO ORDERED.

Dated:   August 11, 2023
         New York, New York

_____
Hon. Ronnie Abrams
United States District Judge